UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CV-81027 - MARRA/JOHNSON

GELTECH SOLUTIONS, INC.,
a Florida corporation,

Plaintiff,

vs.

MARTEAL, LTD. d/b/a,
DYNA-GRO NUTRITION
SOLUTIONS,
a California corporation,

Defendant.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS OR TRANSFER

This cause is before the Court upon Defendant Marteal Ltd.'s ("Marteal") Motion to Dismiss or Transfer [DE 20], filed November 23, 2009. The motion is fully briefed and ripe for review. See DE 22, 24. The Court has carefully considered the motion, response, and reply and is otherwise fully advised in the premises.

## I.  INTRODUCTION

Plaintiff Geltech Solutions, Inc. ("Geltech") manufactures and sells a plant moisture product under the name "RootGel." DE 13, Amended Complaint ("Compl.") ¶ 13. Marteal makes and sells a plant growth product under the registered trademark "ROOT-GEL." Compl. ¶ 14. The "ROOT-GEL" trademark is not presently owned by Marteal; Marteal assigned it to Susan

Martin and David Neal, a married couple residing in California who own and operate Marteal. Compl. ¶ 5. On June 17, 2009, counsel for Martin and Neal sent a cease-and-desist letter to Geltech, alleging that Geltech was infringing upon the "ROOT-GEL" trademark. DE 13, Ex. B. The letter promised that if no response was received within ten days, "all appropriate action" would be taken in order to secure the rights under the "ROOT-GEL" mark. *Id*.

Nearly a month later, on July 14, 2009, Geltech initiated the instant action seeking a declaratory judgment of noninfringement [DE 1]. In response, on October 13, 2009, Marteal filed a motion to dismiss [DE 9]. Then, on October 14, 2009, Susan Martin and David Neal filed suit for trademark infringement against Geltech in the United States District Court for the Northern District of California. See DE 20 at 5. On November 3, 2009 Geltech amended its initial complaint [DE 13], and Marteal moved the Court for dismissal or transfer on November 23, 2009 [DE 20].

In its motion, Marteal argues that this Court lacks subject matter jurisdiction over the instant action because there is no case or controversy, warranting dismissal under Fed. R. Civ. P. 12(b)(1). Marteal alleges that since Martin and Neal are the owners of the registered trademark, and thus the real party in interest, there is no actual controversy between the parties in this case. Marteal claims that it is a mere licensee of the "ROOT-GEL" mark, and that it never threatened litigation or took any other affirmative

2

action against Geltech. Finally, Marteal asserts that the declaratory judgment action fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) due to Martin and Neal's incontestable ownership of the registered trademark.

In the alternative, Marteal argues for transfer of this case pursuant to 28 U.S.C. § 1404(a). Marteal contends that venue is improper in the Southern District of Florida because of the inconvenience that would be imposed on the witnesses and the parties, the relative difficulty in obtaining documents, and because the locus of operative facts favors venue in California. According to Marteal, Geltech's choice of forum should be accorded little or no weight because Geltech sued in anticipation of imminent litigation and because of Martin and Neal's pending infringement suit in the Northern District of California.

Geltech responds that the real controversy is between Geltech and Marteal, the two business entities that market and sell the products at issue. Geltech argues that Martin and Neal are the agents of Marteal as its sole officers and directors, and thus the cease-and-desist letter was actually a threat from Marteal, despite Martin and Neal's registered ownership of the trademark. Geltech further claims that "ROOT-GEL" is exclusively marketed and sold by Marteal, that Marteal is wholly controlled by Martin and Neal, and that in light of all these facts, the parties have adverse legal interests sufficient to justify a declaratory judgment suit.

3

In opposition to the motion to transfer, Geltech contends that venue is proper because it chose to sue in the Southern District of Florida, and the plaintiff's choice of forum should ordinarily not be disturbed. Geltech argues that the equitable factors surrounding the case do not warrant transfer; the balance of interests is neutral or in equipoise with respect to the convenience of the parties and witnesses, as well as the relative burdens of accessing documents and other sources of proof. Geltech argues that the anticipatory proceeding doctrine does not apply in this case because there was no concrete threat of infringement litigation. Finally, Geltech notes that the pending suit in the Northern District of California was filed several months after Geltech's initial complaint was filed in this action.

II. SUBJECT MATTER JURISDICTION

A. Standard of Review

A claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) if a federal court lacks subject matter jurisdiction to hear the claim. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. See New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008). When evaluating a facial attack on a complaint for lack of subject matter jurisdiction, the Court takes the allegations contained in the plaintiff's complaint as true and then resolves the question of whether

subject matter jurisdiction exists as a matter of law. See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

        B. "Case or Controversy" Requirement

In order for a federal court to have subject matter jurisdiction to hear an action, there must be an actual case or controversy. U.S. Const. Art. III, § 2, cl. 1. In actions pursuant to the Declaratory Judgment Act, the Supreme Court has held that the dispute before the court must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). The analysis focuses on whether "the factual and legal dimensions of the dispute are well defined," and not on the risk or imminent threat of suit. See id. at 128. If the "'facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality,'" then a case or controversy exists for the purposes of the Declaratory Judgment Act. See id. at 127 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

While the Supreme Court supplanted the previous "apprehension of

suit" test for declaratory judgment jurisdiction in MedImmune, threats of suit and other communications between the parties do still play a key role in determining whether their interests are sufficiently adverse to permit declaratory relief. See Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1244 (10th Cir. 2008) (history of trademark opposition filings, combined with declaratory defendant's express suggestions of prior infringement, were sufficient to confer jurisdiction). The mere existence of prior litigation, however, is not sufficient to create a case or controversy; this Court has held that a complaint must allege an objectively reasonable basis for believing a current dispute exists in order to bring suit. See Breckenridge Pharm., Inc. v. Everett Lab., Inc., No. 09-80015-CIV, 2009 WL 654214, *4 (S.D. Fla. 2009) (finding no controversy when complaint did not allege any conduct by defendant indicating an intent to enforce its patent rights).

Though some affirmative act on the part of the declaratory judgment defendant is generally necessary in order to define the bounds of the conflict, there is no requirement that the defendant actually be able to sue the plaintiff at the time of the complaint. See Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (finding subject matter jurisdiction even though one of the defendants could not have sued plaintiff insurance company). Nor will the forbearance from suit by a party protect it from being the defendant in a declaratory judgment action if the party has shown "a

preparedness and willingness" to enforce its rights. See SanDisk Corp. v.
STMicroelectronics, Inc., 480 F.3d 1372, 1382-83 (Fed. Cir. 2007) (promise
not to sue did not moot actual controversy created by course of conduct of
declaratory judgment defendant). Finally, in order for the dispute to have
the necessary immediacy and reality, the conduct of the declaratory
judgment plaintiff must be definite enough to bring its interests into actual
conflict with the defendant. See Vantage Trailers, Inc. v. Beall Corp., 567
F.3d 745, 751 (5th Cir. 2009) (design and production plans of a truck trailer
did not confer declaratory judgment jurisdiction since potentially infringing
elements of the plaintiff's trailer were not substantially fixed).

    C. Trademark Licensee Standing

    In order to bring a trademark infringement suit under 15 U.S.C. §
1114, the plaintiff must be a "registrant," a term that only encompasses the
trademark registrant and its "legal representatives, predecessors, successors
and assigns." 15 U.S.C. § 1127. Trademark licensees thus typically do not
have standing to sue under § 1114. See Finance Inv. Co. (Bermuda) Ltd. v.
Geberit AG, 165 F.3d 526, 531 (7th Cir. 1998). Courts have held, however,
that exclusive licensees of trademarks can sue to protect the trademark from
infringement. See Westowne Shoes, Inc. v. Brown Group, Inc., 104 F.3d
994, 997 (7th Cir. 1997); Experian Marketing Solutions, Inc. v. U.S. Data
Corp., No. 8:09CV24, 2009 WL 2902957, *3-*4  (D.Neb. 2009) (collecting

cases). The standing conferred to exclusive trademark licensees is not unique; exclusive licensees of a patent or copyright may also bring suit against an infringer without the intellectual property owner's participation. See, e.g., Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1483-84 (Fed. Cir. 1998); Imperial Residential Design, Inc. v. Palms Development Group, Inc., 29 F.3d 581, 583 (11th Cir. 1994).

 D. Discussion

Marteal moves for dismissal of the instant action due to lack of a controversy sufficient to confer subject matter jurisdiction. Marteal asserts that because Martin and Neal are the owners of the "ROOT-GEL" trademark, not Marteal, there is no dispute between Marteal and Geltech. Additionally, Marteal claims that it "cannot legally assert rights for infringement of the registration, either as a licensee or a related company." DE 24.

Exclusive licensees of a trademark, however, have the right to sue for infringement under 15 U.S.C. § 1114. See Audi AG v. Shokan Coachworks, Inc., 592 F. Supp. 2d 246, 272 n.6 (N.D.N.Y. 2008); Shell Co., Ltd. v. Los Frailes Service Station, Inc., 596 F. Supp. 2d 193, 202-03 (D.P.R. 2008). Cf. Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1190 (6th Cir. 1988) (undisputed testimony established that exclusive licensee of service mark had standing to sue). In order to determine whether a licensee is exclusive, courts examine whether the license agreement contains any duties or restrictions (such as

geographic limitations on the use of the mark). See Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526, 531 (7th Cir. 1998); Coyne's & Co., Inc. v. Enesco, LLC, 565 F. Supp. 2d 1027, 1043 (D. Minn. 2008) (no exclusive license; contract provision required licensee to ask permission from trademark owner to sue); O.O.C. Apparel, Inc. v. Ross Stores, Inc., No. 04-6409(PGS), 2007 WL 869551, *4 (D.N.J. 2007) (licensee had no standing where licensor retained power to approve infringement lawsuits). Another important factor is the extent to which the trademark owner retains any rights in the mark; some courts require an exclusive licensee to be able to exclude the trademark owner from using the mark himself. See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 159 (1st Cir. 1977) (rejecting exclusivity argument where licensee did not have the power to restrict importations and sales by the licensor); Shell Co., Ltd., 596 F. Supp. 2d at 203 n.8. But cf. ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586, 598 n.10 (5th Cir. 2003) (while territorially exclusive distributors had no standing to bring trademark dilution action because owner retained right to "police" the mark, they could bring ordinary infringement actions). In the analysis, courts look at the actual relationship between the licensor and the licensee rather than the express terms of the license. See Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (The use of the word "exclusive" is not controlling; what matters is the substance

of the arrangement).

Here, Geltech explicitly alleges that Marteal is the "sole and exclusive licensee of the mark." Compl. ¶ 4. To support this legal conclusion, it is further alleged that Marteal makes and sells the "ROOT-GEL" product throughout the United States, and that Martin and Neal own and operate Marteal. Compl. ¶¶ 4-5. The Amended Complaint claims that Martin and Neal do not personally engage in licensing, marketing, or selling "ROOT-GEL" in any fashion except through their closely-held corporate entity, Marteal. Compl. ¶ 9. In the cease-and-desist letter referenced by the Amended Complaint, counsel for Martin and Neal referred to "ROOT-GEL" as being "my clients' products," despite the fact that Marteal is the only entity that markets and sells "ROOT-GEL." DE 13, Ex. B. Even the product label specimen (establishing actual use of the mark in commerce) shows the "ROOT-GEL" mark along with Marteal's name and address. DE 13, Ex. C.

Accepting these facts as true for the purposes of this motion, the Court finds that Geltech has sufficiently alleged that Marteal is the "sole and exclusive" licensee of the "ROOT-GEL" trademark. From the Amended Complaint and the documents it references, it may be plausibly inferred that Marteal has the power to market, sell, and otherwise exploit products under the mark, that Marteal's license to employ the mark has no limitations, geographic or otherwise, and that Martin and Neal do not license "ROOT-

GEL" to anyone other than the corporation they wholly control. The Court of Appeals for the Federal Circuit has held that "[w]hile a patent holding subsidiary is a legitimate creature and may provide certain business advantages, it cannot fairly be used to insulate patent owners from defending declaratory judgment actions." Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1271 (Fed. Cir. 1998) (finding personal jurisdiction over parent company in spite of the assignment of patents to subsidiary holding company). Though the instant case involves a trademark and not a patent, the Court finds that the same rationale applies. See Windsurfing Intern. Inc. v. AMF Inc., 828 F.2d 755, 757 (Fed. Cir. 1987) ("declaratory judgment actions involving trademarks are analogous to those involving patents"). Here, the Amended Complaint alleges that Marteal has assigned the trademark to Martin and Neal and that they, in turn, have granted an exclusive license to Marteal. Therefore, Marteal has standing to sue for infringement, and thus may be haled into court as the defendant in a declaratory judgment infringement action.

Merely having the ability to sue for infringement does not end the "case or controversy" analysis, however; Marteal also argues that it never took any affirmative action to put Geltech in apprehension of suit. See DE 20. Under MedImmune, the test turns on whether Marteal and Geltech's actions, viewed in light of "all the circumstances," show that a live

controversy exists, not whether the declaratory judgment plaintiff feared a lawsuit. See also Prasco, LLC v. Medicis Pharmaceutical Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008). In this case, Geltech concedes that Martin and Neal, not Marteal, ostensibly sent the cease-and-desist letter threatening unspecified future action against Geltech. Compl. ¶ 7.

Geltech also alleges, however, that Martin and Neal own, operate, and control Marteal, and that the "ROOT-GEL" trademark is used solely by Marteal. Compl. ¶ 9, 12. Courts have held that threats of suit from an agent of an intellectual property owner may give rise to a justiciable controversy with the owner for the purposes of declaratory judgment. See Poly-America, L.P. v. Stego Industries, L.L.C., No. 3:08-CV-2224-G, 2010 WL 792217, at *5 (N.D. Tex. 2010) (threat of litigation issued by member of limited liability company); Shloss v. Sweeney, 515 F. Supp. 2d 1068, 1077 (N.D. Cal. 2007) (conduct of copyright owner's apparent agent helped create "apprehension of liability"); Minute Man Anchors, Inc. v. Oliver Technologies, Inc., No. 1:04 CV 27, 2005 WL 1871164, at *11 (W.D.N.C. 2005) (denying dismissal where patent owner and president of declaratory judgment defendant sent cease and desist letter). Cf. Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc., 655 F.2d 938, 945 (9th Cir. 1981) (under pre-MedImmune reasonable apprehension test, "[o]ne of the elements of reasonableness is whether it was reasonable for a listener to assume that

the speaker was speaking for his company"). But cf. <u>Russian Standard Vodka</u> <u>(USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.</u>, 523 F. Supp. 2d 376, 385 (S.D.N.Y. 2007) (comments from vodka marketer, importer, and distributor did not extend to its manufacturer).

In the instant case, Geltech has sufficiently alleged that Martin and Neal are the agents of Marteal. Geltech claims that Martin and Neal wholly own and operate Marteal. Compl. ¶ 5. Additionally, the Amended Complaint incorporates Martin and Neal's cease-and-desist letter, which ambiguously refers to Martin and Neal's marketing and selling of "ROOT-GEL;" these are activities that are purportedly conducted only by Marteal. DE 13, Ex. B. Looking at the overall context of the trademark dispute, it was reasonable for Geltech to assume that Martin and Neal were speaking on behalf of Marteal, and that Marteal, as an exclusive licensee, could sue Geltech to enforce its rights in the "ROOT-GEL" trademark. Therefore, under the "all the circumstances" test the Supreme Court applied in <u>MedImmune</u>, the Court finds that Marteal and Geltech's legal interests are objectively adverse, their conflict is well defined, and Geltech's complaint properly alleges the basis of that conflict, despite Marteal never formally issuing a threat against Geltech in its own name.

Based on the foregoing analysis, this Court finds that there is a sufficient controversy between the parties to support the exercise of the

13

Court's jurisdiction.

### III.  VENUE

#### A. Standard of Review

Notwithstanding proper jurisdiction, federal courts have wide discretion to transfer civil actions "in the interests of justice." 28 U.S.C. § 1404(a). In a motion to transfer, "the burden is on the movant to establish that the suggested forum is more convenient." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). As a threshold matter, there must normally be an adequate alternate forum that possesses jurisdiction over the whole case in order for transfer to be available. See Wilson v. Island Seas Investments, Ltd., 590 F.3d 1264, 1269-70 (11th Cir. 2009). Determinations of the appropriateness of transfer require balancing the various factors for and against transfer, and are only overturned for clear abuse of discretion. See id.

#### B. The First-Filed Rule and Anticipatory Litigation

Concurrent actions involving the same parties and facts are sometimes filed in separate federal district courts; in these situations, the Eleventh Circuit follows the "first-filed" rule. Manuel v. Convergys Corp., 430 F.3d 1132 (11th Cir. 2005). In Manuel, the Court of Appeals held that a Georgia employee challenging a non-competition agreement could sue in his home forum of Georgia, notwithstanding a forum selection clause in favor of Ohio. Id. at 1138. Central to the decision was the "first-filed" presumption: the

14

party objecting to jurisdiction in the first-filed forum carries the burden of proving "compelling circumstances" to warrant transferring the case. See id. at 1135. Since the Georgia employee filed his action first, the defendant could not provide enough compelling equitable circumstances to merit transfer, and the Court held that the Georgia court was within its substantial discretion to hear the case. Id. at 1137-38.

The "first-filed" rule is not applied strictly or mechanically, otherwise litigants would invariably race to the courthouse in order to procure their favored forum. See id. at 1135. When a party files a declaratory judgment action in direct response to an imminent lawsuit, for instance, they may be deemed to be engaging in anticipatory litigation. See Ven-Fuel, Inc. v. Department of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982) (upholding district court's dismissal of a lawsuit as it was filed one day after an express threat from the Treasury Department to pay a penalty "forthwith"). Anticipatory litigation is an important equitable factor in the court's decision to transfer, with the practical result being that the plaintiff's choice of forum will be accorded less weight in the transfer analysis. See id.

<u>C. Public and Private Factors</u>

In a transfer analysis, courts consider both public and private factors in order to determine the proper forum. Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1356-57 (11th Cir. 2008).

Private interest factors are those reasons for transfer related to the parties themselves: ease of access to documents and other real evidence, access to witnesses, and other burdens and costs with which each party will be faced if transfer is or is not granted. See id. Public interest factors are those reasons related to the forum: the familiarity of the court with the applicable law, the connection with the chosen forum (in order to avoid juries having to hear cases which are wholly unrelated to local interests), and a host of other factors relating to judicial efficiency. See id. Public interest factors may only be considered if the private factors are even or neutral. Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1298 (11th Cir. 2009).

        D. Discussion

        In this case, Geltech's initial Complaint was filed in the Southern District of Florida before the filing of Martin and Neal's complaint in the Northern District of California. DE 22. Marteal argues, however, that Geltech was engaged in anticipatory litigation, and therefore its choice of forum should be accorded little or no weight under the reasoning in Ven-Fuel.

        The determination of whether a party is engaged in anticipatory litigation depends on a number of equitable factors, including "'considerations of judicial and litigant economy, and the just and effective disposition of disputes.'" Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (quoting Genentech v. Eli Lilly & Co., 998 F.2d

16

931, 938 (Fed. Cir. 1993)). When parallel proceedings are occurring in two courts, the most readily apparent consideration is the chronology of the filings in each case; if the timeline shows that the first party to file merely nosed ahead in its race to the courthouse, then the order of filings may be given little or no weight. See K-Swiss Inc. v. Puma AG Rudolf Dassler Sport, No. CV 09-3022 GAF (PLAx), 2009 WL 2049702, at *3 (C.D. Cal. 2009) (near-simultaneous filings in separate courts triggered anticipatory litigation inquiry). The circumstances surrounding the negotiations of the parties may also inform a court's judgment. See Vital Pharmaceuticals, Inc. v. Cytosport, Inc., No. 08-61753-CIV, 2009 WL 302277, at *3 (S.D. Fla. 2009) (in the presence of multiple and continuing infringement discussions, cease and desist letter demonstrated the "imminency of the other law suit"). When the party bringing the first-filed action misled the other party or promised not to sue, for instance, a court is not required to respect such "procedural fencing." See Chambers v. Cooney, No. 07-0373-WS-B, 2007 WL 2493682, at *5 (S.D. Ala. 2007) (no evidence that plaintiffs lulled defendant "into a false sense of security as they finalized and filed their Complaint while his gaze was averted"). Although a reasonable fear of future litigation may satisfy the "case or controversy" requirement, a declaratory judgment action filed in response to a concrete threat of imminent litigation will often lose the benefit of the first-filed presumption. See Lexington Ins. Co. v. Rolison, 434

17

F. Supp. 2d 1228, 1240 (S.D. Ala. 2006) (letter from declaratory judgment defendant could not "reasonably be construed as anything other than a direct threat of litigation"). Finally, the first-filed presumption may be defeated if it is evident that a party is engaging in improper forum-shopping. See Pennsylvania Lumbermen Mut. Ins. Co. v. T.R. Miller Mill Co., No. Civ.A.05-0302-WS-M, 2006 WL 276964, at *4 (S.D. Ala. 2006) (no forum shopping; plaintiff did not gain any procedural advantage by bringing declaratory judgment action in the chosen forum).

In this case, Geltech did file its complaint for declaratory judgment after receiving Martin and Neal's cease-and-desist letter. Compl. ¶ 7. Yet Martin and Neal's letter merely threatened unspecified future legal action; it did not threaten immediate suit. DE 13, Ex. B. The lack of threatened imminent litigation is also evidenced by the timing of Martin and Neal's eventual suit in the Northern District of California, which only came several months after Geltech's initial complaint was filed. See DE 20 at 5. The chronology of these filings is not consistent with a declaratory judgment plaintiff racing to the courthouse to beat the other party. Compare Ven-Fuel, Inc., 673 F.2d at 1195 (anticipatory litigation where second suit filed one week later), with Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F. Supp. 2d 949, 961 (N.D. Cal. 2008) (no anticipatory litigation; second suit filed three months later). There is also no indication that Geltech misled or

stalled Marteal during the negotiations that presumably occurred during the period between the initial cease-and-desist letter and the filing of Geltech's complaint. See Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 (5th Cir. 1983) (party agreed to extend time allowed for suit under contract provision, then immediately filed declaratory judgment). Finally, Geltech is not engaging in forum-shopping; as a resident corporation, Geltech has a substantial connection to this forum and the same federal trademark law would apply to either suit. In light of all these considerations, the Court finds that Geltech has not engaged in anticipatory litigation.

Having found that Geltech benefits from the first-filed presumption, the analysis now turns to the other private interest factors in this case. The burdens of producing evidence slightly favor California: while most of the evidence is in the form of documents that could easily be filed in either court, the findings of Marteal's private investigator and the evidence relating to RootGel West, Geltech's western distributor, are located in California. DE 20. The locus of operative facts also slightly favors California: though both entities sell products throughout the United States, the trademark owners live in California and Geltech had a stronger presence in California through its RootGel West distributorship than Marteal has in Florida. DE 20.

On the other hand, Geltech is a Florida corporation suing in its home forum, and its choice of forum should not be disturbed lightly. The burden

suffered by Marteal from having to litigate in Florida would also be suffered by Geltech in California should transfer be granted, so the convenience of the parties is in equipoise. The convenience of the witnesses for both companies is also neutral, as the material witnesses for each side reside in either Florida or California, and litigation in either forum would impose similar burdens for both of them.

Taken as a whole, the burdens Marteal has shown do not provide the compelling circumstances necessary to outweigh Geltech's first-filed choice to sue in its home forum. Since the private interest factors weigh against transfer, the public interest factors are inapposite and will not be considered.

The Court finds, after considering the interests both for and against transfer, that venue is proper in the Southern District of Florida.

IV. Conclusion

This Court has carefully examined the filings in this cause and finds that there is a case or controversy between the parties sufficient to permit the exercise of its jurisdiction, and that a transfer to the Northern District of California pursuant to § 1404(a) is not warranted. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Marteal's Motion to Dismiss or Transfer [DE 20] is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of May, 2010.

_____

KENNETH A.  MARRA
United States District Judge

_____